**Order Filed on December 31, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 22-14539 |
| **NATIONAL REALTY INVESTMENT ADVISORS, LLC,** *et al.,* | Chapter: 11 |
| Debtors. | Judge: John K. Sherwood |
| **AIRN LIQUIDATION TRUST CO., LLC,** | |
| Plaintiff, | Adv. Pro. No.: 25-01239 |
| v. | |
| **BANK OF AMERICA, N.A.,** | |
| Defendant. | |

## DECISION RE: DEFENDANT'S MOTION TO DISMISS

The relief set forth on the following pages numbered two (2) through twenty-six (26) is

hereby **ORDERED.**


**DATED: December 31, 2025**

_____

Honorable John K. Sherwood
United States Bankruptcy Court

Debtors:        National Realty Investment Advisors, LLC, *et al.*
Case No.:       22-14539
Adv. Pro.:      25-01239
Caption:        **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

In this adversary proceeding, Plaintiff AIRN Liquidating Trust Co. LLC ("Plaintiff") seeks a judgment against Defendant Bank of America, N.A. ("Bank") for its alleged role in a real estate Ponzi scheme carried out through the Debtors, National Realty Investment Advisors, LLC, and its affiliates ("NRIA"). The Bank performed banking services for NRIA from September 2016 to June 2022, during which time NRIA opened 32 accounts. [ECF No. 1, ¶ 2]. The Plaintiff alleges that the Bank knowingly acted as an "agent for the flow of funds from Investors to NRIA's fraudulent enterprise." [ECF No. 1, ¶ 2]. The Bank filed a Motion to Dismiss based on two primary arguments that: (i) the Plaintiff lacks standing to assert tort claims on behalf of NRIA's creditors under New Jersey law and (ii) the Plaintiff's aiding and abetting claims should be dismissed for failing to adequately allege that the Bank had actual knowledge of the Ponzi scheme or the Bank substantially assisted the Ponzi scheme. The Bank also argues that the rest of the Plaintiff's less significant claims should be dismissed on other grounds. [ECF No. 10]. For the reasons set forth below, the Bank's Motion is granted as to Counts II, V, VII, VIII, XII, and XIII, and is denied as to all other Counts.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey. The Plaintiff alleges that this is a core proceeding citing to 28 U.S.C. § 157(b)(2). The Bank takes no position regarding jurisdiction in its Motion. Under 28 U.S.C. § 157(b)(3), this Court must determine whether this proceeding is core on its own motion or upon a motion by a party. Neither party has moved for such a determination. The Court directs the parties to meet and

Page 3

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

confer on whether this matter should be treated as a core or non-core proceeding and, if necessary,

a briefing schedule to present the issue to the Court for determination. To the extent this proceeding

(or any part thereof) is ultimately determined to be non-core, this Decision would constitute the

Court's proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1).

## FACTS AND PROCEDURAL HISTORY

The Complaint alleges that Thomas Nicholas Salzano, a/k/a Nick Salzano, Rey E. Grabato

II, and other co-conspirators, operated NRIA as a Ponzi scheme. NRIA facilitated this scheme

under the guise of a real estate development firm and fund manager. It promised Investors high

rates of returns to solicit investments.[1] By the time the Ponzi scheme collapsed, NRIA had raised

approximately $664 million from almost 2,000 Investors. [ECF No. 1, ¶ 1]. NRIA filed for Chapter

11 relief on June 7, 2022. Its Amended Chapter 11 Plan was confirmed on August 10, 2023, and

provided for the formation of a liquidation trust as a successor to NRIA's bankruptcy estate for

purposes of liquidating real estate assets and pursuing litigation. The litigation claims contributed

to the trust under the Chapter 11 Plan included claims contributed by NRIA's Investors. [Case No.

22-14539, ECF No. 3599].

NRIA opened approximately thirty-two (32) accounts at the Bank. NRIA purportedly used

twenty-eight (28) of these accounts for property-specific limited liability companies formed as

investment funds and the money in these accounts was to be used for

stand-alone real estate projects. Commingling with other funds was prohibited, but NRIA

commingled Investor and lender funds in these accounts. As is the nature of a Ponzi scheme, NRIA

---

[1] Capitalized terms not otherwise defined herein have the same definitions as set forth in the Complaint.

Page 4

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| **Caption:** | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

was not profitable and paid distributions to old Investors from new Investor funds through the Bank of America accounts. In the time that NRIA banked with the Bank, approximately $233 million flowed through these accounts. [ECF No. 1, ¶¶ 2, 3].

The Plaintiff alleges in the Complaint that the Bank knew or should have known about the Ponzi scheme activity yet failed to stop the scheme and assisted with it. Because of the extensive due diligence and compliance requirements of the Bank, the Plaintiff's suggestion is that it must have known that NRIA was involved in foul play. Also, the Plaintiff asserts that the Bank was aware of the prior fraudulent schemes orchestrated by NRIA's principals. [ECF No. 1, ¶¶ 4-7].

The Complaint against the Bank contains thirteen (13) counts summarized below.

- Count I – Aiding and Abetting Fraud – The Bank provided substantial assistance to the NRIA fraud by "effectuating millions of dollars in transfers through NRIA's accounts" with the knowledge that the NRIA accounts were being operated in a way consistent with a Ponzi scheme.
- Count II – Aiding and Abetting Securities Fraud under New Jersey Law – As an agent of NRIA, the Bank materially participated in the fraudulent sale of securities to the Investors.
- Count III – Aiding, Abetting, or Participation in Breach of Fiduciary Duty – As an investment advisor, NRIA owed a fiduciary duty to its Investors. The Bank knew that NRIA had a fiduciary duty yet knowingly allowed the NRIA accounts at the Bank to be used to conduct fraudulent activity in violation of NRIA's fiduciary duty.
- Count IV – Actual Fraudulent Transfers under 11 U.S.C. §§ 548(a)(1)(A) and 544 – The Bank received banking and management fees from NRIA in the amount of at least $19,494.28 in the two years preceding the bankruptcy. These transfers were made with actual intent to hinder, delay, or defraud creditors because they were made in furtherance of the Ponzi scheme.
- Count V – Constructive Fraudulent Transfers under 11 U.S.C. §§ 548(a)(1)(B) and 544(b) – The Bank received banking and management fees from NRIA in the amount of at least $19,494.28 in the two years preceding the bankruptcy. NRIA did not receive reasonably equivalent value from these transfers and was insolvent or became insolvent as a result, engaged or was about to engage in a business or transaction for which any remaining

Page 5

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

property was an unreasonably small capital, and/or intended or believed it would incur debts beyond its ability to pay.

- <u>Count VI – Actual Fraudulent Transfers under New Jersey Law</u> – The Bank received banking and management fees from NRIA in the amount of at least $19,494.28 in the two years preceding the bankruptcy, and at least $40,970.38 in the four years preceding the bankruptcy. These were fraudulent transfers by NRIA, and the Bank did not receive them in good faith.

- <u>Count VII – Constructive Fraudulent Transfers under New Jersey Law</u> – The Bank received banking and management fees from NRIA in the amount of at least $19,494.28 in the two years preceding the bankruptcy, and at least $40,970.38 in the four years preceding the bankruptcy. NRIA did not receive reasonably equivalent value from these transfers and was insolvent or became insolvent as a result, engaged or was about to engage in a business or transaction for which any remaining property was an unreasonably small capital, and/or intended or believed it would incur debts beyond its ability to pay.

- <u>Count VIII – Preferences under 11 U.S.C. § 547</u> – The Bank received preferential transfers from NRIA of at least $2,020.95 within 90 days of the bankruptcy.

- <u>Count IX – Recovery of Avoided Transfers under 11 U.S.C. § 550</u> – The transfers described in Counts IV through VIII are avoidable and recoverable by the Plaintiff.

- <u>Count X – Preservation of Avoided Transfers under 11 U.S.C. § 551</u> – The transfers described in Count IV through VIII are avoidable and should be preserved for the benefit of the bankruptcy estate.

- <u>Count XI – Aiding, Abetting, or Participation in Conversion</u> – NRIA Investors owned, possessed, or had the right to immediate possession of funds in accounts at the Bank but NRIA and its agents wrongfully misappropriated them. The Bank knowingly or recklessly aided, abetted or participated in the misappropriation and conversion of Investor property.

- <u>Count XII – Unjust Enrichment</u> – The Bank received sums for its services and the retention of these sums would be unjust.

- <u>Count XIII – Disallowance and Equitable Subordination of Any and All Claims</u> – To the extent the Bank files a proof of claim, this claim should be disallowed or equitably subordinated.

[ECF No. 1].

In its Motion to Dismiss, the Bank states that it had nothing more than a standard small business banking relationship with NRIA. It had no knowledge of, and did not participate in, NRIA's fraudulent schemes. The Bank argues that the Plaintiff lacks standing under New Jersey

Page 6

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

law to assert tort claims on behalf of NRIA's creditors, so Counts I, II, III, and XI should be

dismissed. Also, the Bank argues that the Plaintiff's aiding and abetting claims in Counts I, II, III,

and XI should be dismissed because the Plaintiff fails to adequately allege that the Bank had actual

knowledge that NRIA operated as a Ponzi scheme and that the Bank substantially assisted the

NRIA Ponzi scheme. In addition, the Bank argues that the avoidance claims in Counts IV, V, VI,

VII, VIII, IX, and X should be dismissed for the Plaintiff's failure: to allege actual intent to hinder,

delay, or defraud creditors or that the Ponzi scheme presumption applies to the intentional

fraudulent transfer claims (Counts IV, VI); to allege NRIA did not receive reasonably equivalent

value in exchange for the transfers or that NRIA was insolvent when the banking fees were paid

(Counts V, VII); and to state a claim for preference (Count VIII). Moreover, the Bank states that

the Plaintiff failed to adequately allege unjust enrichment (Count XII) and that the Plaintiff's claim

for disallowance and equitable subordination is not ripe (Count XIII). [ECF No. 10].

In response to the Bank's Motion to Dismiss, the Plaintiff states that it has standing to

assert tort claims on behalf of Contributing Investors because § 1123(a)(5) of the Bankruptcy Code

preempts New Jersey's prejudgment assignment restrictions, the Investor claims were liquidated

and reduced to judgment as of the effective date, the prohibition on the assignability of tort claims

under New Jersey law is not applicable, and the confirmed Chapter 11 Plan appointed the Plaintiff

as representative of the Contributing Investors. Also, the Plaintiff argues it sufficiently pled the

aiding and abetting claims in Counts I, II, III, and XI because it alleged that the Bank had actual

knowledge of and substantially assisted the Ponzi scheme. In addition, the Plaintiff states it

sufficiently pled its claims for aiding and abetting securities fraud (Count II), avoidance claims

under the Bankruptcy Code and New Jersey law (Counts IV, V, VI, VII, VIII, IX, and X), unjust

Page 7

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

enrichment (Count XII), and disallowance and equitable subordination (XIII). Finally, the Plaintiff

requests leave to amend the Complaint if the Motion to Dismiss is granted. [ECF No. 14].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain

statement of the claim showing that the pleader is entitled to relief." A complaint "does not need

detailed factual allegations," but the plaintiff is obligated to show grounds for relief that are more

than labels, conclusions, or elements of a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). Therefore, to survive a motion to dismiss under Rule 12(b)(6), a complaint requires

"sufficient factual matter" that, when accepted as true, states a claim plausible on its face. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 663 (2009). Factual plausibility exists when factual content "allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

at 678 (citing *Twombly*, 550 U.S. at 556, 570).

The court's task is context-specific, and if the court cannot infer from well-pleaded facts

more than the possibility of misconduct, then the complaint has only alleged, but not shown,

entitlement to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Federal Rule of Civil

Procedure 12(b)(6) is made applicable in adversary proceedings pursuant to Federal Rule of

Bankruptcy Procedure 7012(b) and governs on a motion to dismiss. "In order to grant a 12(b)(6)

motion to dismiss, the Court must find that [the plaintiff] will be unable to prevail even if [it

proves] all the allegations in the complaint, basing its decision solely on the legal sufficiency of

the complaint." *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 507 (D.N.J. 2000).

Additionally, Fed. R. Civ. P. 9(b) imposes a heightened pleading standard upon fraud

claims, requiring a party to "state with particularity the circumstances constituting fraud." *See In*

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

*re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997) (holding that dismissal under Rule 12(b)(6) alone may not be proper, but because of the fraud-claim particularity requirements, dismissal under Rule 9(b) may be granted).

## ANALYSIS

### I.   The Plaintiff's Standing to Bring Tort Claims Against the Bank.

#### a.   The Plaintiff Has Standing to Bring Claims on Behalf of the Debtors.

Through NRIA's confirmed Plan, the Plaintiff as Liquidation Trustee was appointed as the successor of the Debtors. [ECF No. 1, ¶17]. The Plaintiff was established to pursue or liquidate the Liquidation Trust Assets and make distributions to Liquidation Trust Beneficiaries pursuant to the terms of the Liquidation Trust Agreement. [Case No. 22-14539, ECF No. 2732-1]. As stated in the Complaint, the Plaintiff brings this adversary proceeding "*as the Debtors' assignee*, and on behalf of all Contributing Investors." [ECF No. 1, ¶18] (emphasis added). Thus, even if the Plaintiff was not allowed to assert tort claims on behalf of NRIA's Investors, it could still sue the Bank as the assignee of NRIA. The Complaint sufficiently alleges that NRIA's officers and other "insiders" committed tortious acts. Allegedly, the Bank knew of these acts and provided substantial assistance. The result of the conduct was to drive NRIA deep into insolvency, a harm which impacted all creditors similarly. *See In re AgriBioTech, Inc.*, 319 B.R. 216, 220-24 (D. Nev. 2004) (considering "specific" claims where a creditor experiences individualized harm versus "general" claims where all creditors experience identical harm and finding that the trustee can assert general claims on behalf of the estate).

The Bank argues that to the extent that the Plaintiff is bringing claims on behalf of NRIA, such claims are barred under the doctrine of *in pari delicto*. [ECF No. 10, p. 18 of 44, n.4].

Debtors:        National Realty Investment Advisors, LLC, *et al.*
Case No.:       22-14539
Adv. Pro.:      25-01239
Caption:        **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

However, this Court has held in another adversary proceeding in this case that the *in pari delicto* defense should not be the basis for a motion to dismiss because the actions of the NRIA insiders, Thomas (Nick) Salzano, Dustin Salzano and Rey Grabato II, might not be imputed to the Plaintiff as successor to NRIA. [Case No. 22-14539, Adv. Pro. No. 24-01456, ECF No. 19, pp. 5-8 of 18].

Therefore, the Plaintiff has standing to bring tort claims against the Bank on behalf of NRIA and consideration of the Bank's *in pari delicto* defense is premature.

### b. New Jersey's Anti-Assignment Law is Preempted by § 1123 of the Bankruptcy Code.

The Bank argues that New Jersey law does not allow the assignment of tort claims. "[T]he assignment of tort claims has uniformly been deemed invalid by courts applying New Jersey law." *ALL1, LLC v. Pinnacle Ins. Sols., LLC*, No. A-2291-17T4, 2019 WL 3072090, at *5 (N.J. Super. Ct. App. Div. July 15, 2019). The Plaintiff responds that it does have standing because New Jersey's anti-assignment law is preempted by § 1123(a)(5) of the Bankruptcy Code when tort claims are transferred pursuant to a plan of reorganization. [ECF No. 14].

The Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, establishes federal preemption and makes state laws that "interfere with, or are contrary to, federal law" invalid. *In re Congoleum Corp.*, No. 03-51524, 2008 WL 4186899 at *1 (Bankr. D.N.J. Sept. 2, 2008) (citations omitted). "[E]xpress language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment" may preempt state law. *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 364 (3d Cir. 2012). The Third Circuit identified two foundational preemption principles: Congressional intent and the presumption against preemption. *Id.* at 365. The

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

presumption against preemption is overcome when "a Congressional purpose to preempt . . . is clear and manifest." *Farina v. Nokia Inc.*, 625 F.3d 97, 117 (3d Cir. 2010) (citations omitted).

Congress' intent for § 1123 of the Bankruptcy Code to preempt state law is clear in its introductory provision, that states, "[n]otwithstanding any other applicable nonbankruptcy law . . . ." *In re Fed.-Mogul*, 684 F.3d at 369; 11 U.S.C. § 1123(a). The word "notwithstanding" demonstrates the intention "to supersede all other laws." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (citations omitted). The "notwithstanding" clause applies to the entirety of subsection (a) of § 1123. *In re Fed.-Mogul*, 684 F.3d at 369; *see also Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 493 (3d Cir. 1997). There is no doubt that the plain language in § 1123(a) overcomes the presumption against preemption.

But the Bank argues that § 1123 preemption does not apply here because the transfer of Investors' claims to the Liquidation Trust under the Plan is not a transfer of estate property. The transfer of *estate property* to another entity (such as a trust) is a method to implement a Chapter 11 plan under § 1123(a)(5)(B). This is just one example of an "adequate means" of plan implementation – § 1123(a)(5)(A)-(J) lists nine other examples. And none of the statutory examples provide that the claims of individual creditors can be transferred to a trust. However, § 1123(a)(5) begins its enumerated list with the words "such as," which demonstrates that "[t]he types of means listed in section 1123(a)(5) are clearly illustrative and not exclusive." *In re Fed.-Mogul*, 684 F.3d at 368 (citing 7 *Collier on Bankruptcy* ¶ 1123.01[5]). Further, the Court in *Federal-Mogul* examined the history of § 1123, and did not find any indication that the preemptive scope of the section should be narrowly construed. *In re Fed-Mogul*, 684 F.3d at 378. Just because

Debtors:      National Realty Investment Advisors, LLC, *et al.*
Case No.:     22-14539
Adv. Pro.:    25-01239
Caption:      **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

the assignment of creditor claims to a trust is not an explicitly listed means for implementation of

a plan under § 1123(a)(5), does not mean that this method is prohibited.

This Court approved the contribution of the Investors' claims to the Liquidation Trust for

good reason. One of the key purposes of Chapter 11 is to maximize estate property to satisfy

creditors. *In re Mallinckrodt PLC*, 639 B.R. 837, 886 (Bankr. D. Del. 2022) (citing *Bank of Am.

Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)). NRIA's Chapter

11 case involved an alleged Ponzi scheme with almost 2,000 Investors. Through NRIA's Plan,

these Investors chose to pool their claims into the Liquidation Trust and have the Plaintiff pursue

them on behalf of the group. The alternative would have been to have Investors bring suits on their

own behalf against the Bank (and others) around the country. Many of the Investors' individual

claims were similar to the estate's "general" claims (described above), which would potentially

result in an onslaught of duplicitous litigation. Judicial economy and value enhancement are well

served by the assignment of the Investors' individual tort claims to the Liquidation Trust.

Hence, the Bankruptcy Code preempts New Jersey's anti-assignment laws, and the

assignment of the Investors' individual claims to the Liquidation Trust was an appropriate means

of plan implementation under § 1123(a)(5).

### c. The Terms of the Confirmed Plan per the Confirmation Order Preempts State Law and There Are No Compelling Reasons to Reconsider that Decision.

The law of the case doctrine states that "when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the same case."

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citations omitted).

Adversary proceedings within the same bankruptcy case are considered the same case under this

Debtors:        National Realty Investment Advisors, LLC, *et al.*
Case No.:       22-14539
Adv. Pro.:      25-01239
Caption:        **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

doctrine. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 655 B.R. 149, 166-67 (Bankr.

S.D.N.Y. 2023); *see also In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018), *aff'd*,

943 F.3d 125 (2d Cir. 2019). To promote finality and judicial economy, the law of the case doctrine

precludes relitigation of issues "that were actually litigated and decided by the court." *In re Vaso*

*Active Pharm., Inc.*, 500 B.R. 384, 399 (Bankr. D. Del. 2013) (citation omitted).

This Court already decided that state law was preempted in the Confirmation Order. As set

forth in the Confirmation Order, the Plan and §§ 1123(a) and (b) of the Bankruptcy Code preempt

any state law that would otherwise restrict implementation of the Plan based on the appointment

of the Liquidation Trustee, or any other act or action to be done pursuant to the Plan. [Case No.

22-14539, ECF No. 3599, ¶ 68].

Once a final judgment is made, it is not void "simply because it is or may have been

erroneous." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (citations

omitted). Only compelling and extraordinary circumstances would warrant a reconsideration of

previously decided issues such as new evidence, supervening law, or if "an earlier decision was

*clearly* erroneous and would create manifest injustice." *In re Vaso Active Pharm.*, 500 B.R. at 399

(emphasis added). The Bank fails to assert any compelling or extraordinary circumstances that

would warrant reconsideration of the Confirmation Order. The Bank's substantive defenses to the

Plaintiff's claims are fully preserved and the Bank's liabilities to NRIA and its Investors, if any,

can be decided in one proceeding.

The Court's final judgment in the Confirmation Order provides the Plaintiff with standing

to pursue the Investors' tort claims under the law of the case, notwithstanding any applicable non-

Page 13

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

bankruptcy law. To the extent that the Bank's Motion is based on the Plaintiff's lack of standing, it is denied.

## II.    Aiding and Abetting Fraud.

For a motion to dismiss, the aiding and abetting claims need not be decided on their merits, but the complaint must "state a claim to relief that is plausible on its face" supported by sufficient factual matter that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556 (2007)).

To establish aiding and abetting fraud in New Jersey, the Plaintiff must prove that (1) NRIA committed fraud which caused an injury at the time of the Defendant's assistance; (2) the Defendants was aware its role was "part of an overall illegal or tortious activity" when it provided the assistance; and (3) the Defendant knowingly *and* substantially assisted in the fraud. *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999); *see In re NorVergence, Inc.*, 405 B.R. 709, 746 (Bankr. D.N.J. 2009); *see also State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 387 N.J. Super. 469, 483-84 (App. Div. 2006).

The Complaint easily satisfies the first element of the aiding and abetting analysis because it describes NRIA's fraudulent conduct. The Complaint provides detailed facts to support the Plaintiff's assertion that NRIA's business was a "textbook Ponzi scheme."[2] [ECF No. 1, ¶¶ 34-

---

[2] "Bankruptcy courts have afforded greater pleading liberality in adversary complaints brought by trustees, because a trustee comes to the action as a 'third party outsider to the fraudulent transaction, that must plead fraud on second-hand knowledge for the benefit of the estate and all of its creditors.'" *In re NJ Affordable Homes Corp.*, Case No. 05-60442, 2013 WL 6048836, at *11 (Bankr. D.N.J. Nov. 8, 2013) (citations omitted). The "relaxed Rule 9(b) standard" described in the above New Jersey bankruptcy case should also be applied here because the Plaintiff is a liquidation trustee who has the difficult chore of pleading fraud based on knowledge obtained from documents and other second-hand sources. *See AIRN Liquidation Trust v. Media Effective LLC*, (Adv. Pro. No. 23-01335, ECF No. 91); *AIRN Liquidation Trust Co., LLC v. Wipfli LLP*, (Adv. Pro. No. 24-01456, ECF No. 19).

Debtors:   National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Adv. Pro.:  25-01239
Caption:   **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

79]. The more difficult analysis is whether the Plaintiff's allegations support a reasonable inference that the Bank knowingly and substantially assisted NRIA's fraud.

Knowledge of the underlying fraud is a crucial requirement to prove aiding and abetting liability because "[c]ulpability of some sort is necessary to justify punishment of a secondary actor and mere unknowing participation in another's violation is an improper predicate to liability." *Monsen v. Consol. Dressed Beef Co., Inc.*, 579 F.2d 793, 799 (3d Cir. 1978). The defendant need not have known "all particulars of the primary actor's plan." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 495 (2023) (citation omitted). The knowledge requirement "may be less strict where the alleged aider and abettor derives benefits from the wrongdoing." *Monson*, 579 F.2d at 799 (citation omitted). Even when the aider-abettor derives a benefit, the plaintiff "must establish conscious involvement in impropriety or constructive notice of intended impropriety" which can be demonstrated by a showing that the aider-abettor "had general awareness that his role was part of an overall activity that is improper." *Id.* (citations omitted).

In *Twombly*, the Supreme Court held that alleged "parallel conduct" by telecommunications providers which had the effect of reducing competition from local carriers did not, by itself, establish that the providers had entered into an agreement to prevent competition. *Twombly*, 550 U.S. at 557. The Bank's argument is similar here – just because it opened accounts for NRIA and had access to information that might lead it to suspect that fraud was occurring, does not mean it <u>knew</u> about NRIA's fraud. Just as parallel conduct did not translate to an agreement in *Twombly*, alleged access to knowledge does not equal actual knowledge for the purposes of an aiding and abetting claim. The Court agrees that the Plaintiff will not prevail if it can only prove

Debtors:        National Realty Investment Advisors, LLC, *et al.*
Case No.:       22-14539
Adv. Pro.:      25-01239
Caption:        **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

that, with all its access to NRIA's affairs, the Bank should have known that NRIA was a fraudulent enterprise.

The Court must determine whether the pleadings provide enough information that the Court can plausibly infer the Bank had knowledge of NRIA's fraud. Although Rule 9(b) requires claims of fraud or mistake be stated with particularity, "[m]alice, intent, <u>knowledge</u>, and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b) (emphasis added). As set forth in footnote 2 above, the Court will apply a "relaxed Rule 9(b) standard" to the Plaintiff's allegations regarding the Bank's knowledge of NRIA's fraud because the Liquidation Trustee was not directly involved with the dealings between NRIA and the Bank.

As to the knowledge requirement, the Plaintiff alleged that:

- The Bank told Dustin Salzano to misrepresent that he was a member of NRIA so that he could control the accounts. [ECF No. 1, ¶¶ 8, 52];
- The Bank allowed NRIA's accounts to be used to launder money through round dollar transactions and diversion of Investor funds when the Bank knew accounts were not to be commingled from operating agreements. For example, the Lombard Account was used as a "clearing account" in violation of its operating agreement. [ECF No. 1, ¶¶ 9, 53-55, 131-140];
- The Bank's executives invested in NRIA with the Bank's approval and later speculated that NRIA was a Ponzi scheme. [ECF No. 1, ¶¶ 9, 193-207];
- The Bank provided banking services (specifically, NRIA opened four new accounts) after Thomas "Nick" Salzano's arrest in March 2021. [ECF No. 1, ¶¶ 208-214]. The Bank should have known about NorVergence, another fraudulent scheme orchestrated by some of NRIA's key participants. [ECF No. 1, ¶¶ 101-108];
- The Bank did not comply with anti-money laundering (AML) and know your customer (KYC) mandates or identify "red flags." [ECF No. 1, ¶¶ 80-91]; and
- The Bank provided financing to buyers of NRIA properties. [ECF No. 1, ¶¶ 188-192].

Page 16

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| **Caption:** | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

The Plaintiff's allegations that the Bank allowed improper practices, did not conduct due diligence, and did not oversee its customer's account activity are not flattering to the Bank. With 20/20 hindsight, they do support the allegation that the Bank should have known about NRIA's fraudulent activities. But poor oversight does not necessarily translate to actual knowledge of the ongoing fraud.[3]

Taken together with the above allegations, other allegations by the Plaintiff support a reasonable inference that the Bank may have had knowledge of NRIA's fraud. First, the Bank instructed Dustin Salzano to add the DBA name of "Realty Accounting Services, LLC" to the DeGraw Account. [ECF No. 1, ¶¶ 116-127]. Though the DeGraw Account was supposed to be used only for payments concerning the DeGraw Property, it was being used to make payments to Investors and vendors having nothing to do with DeGraw. Advising Dustin Salzano to add the DBA name to the DeGraw Account drew the Bank's attention to the alleged fact that payments from that account were being made for purposes other than the DeGraw Property. Rather than confronting NRIA on this irregularity, the Plaintiff alleges that the Bank helped NRIA with a strategy that hid the fact that vendors and Investors having nothing to do with the DeGraw Property were being paid from its account. This sounds like more than routine banking. Second, the Plaintiff alleges that after flagging certain NRIA accounts for being prohibited "pooled accounts" and initiating their closure, the Bank permitted the accounts to stay open. [ECF No. 1, ¶¶ 174-184]. When Dustin Salzano learned that the Bank intended to close the accounts, he demanded that they remain open. This led to a meeting in December 2017 among the Bank's "team" to discuss NRIA's

---

[3] The allegations that the Bank employees invested in NRIA with the Bank's approval might hurt the Plaintiff. Who would knowingly invest in a Ponzi scheme?

Debtors:      National Realty Investment Advisors, LLC, *et al.*
Case No.:     22-14539
Adv. Pro.:    25-01239
Caption:      **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

accounts. According to the Complaint, the Bank was concerned at this point about NRIA's accounts because they were "pooled," and the Bank had PPMs which stated that Investors' funds would remain in stand-alone real estate projects. This series of events also supports a reasonable inference that the Plaintiff may prove that the Bank had some knowledge of NRIA's fraud. NRIA's accounts were subject to management level scrutiny at the Bank, which according to the Complaint had access to the Pre-Fund LLC operating agreements and PPMs, and, despite this, NRIA was retained as a customer. The Plaintiff will have to prove that the Bank learned that NRIA was engaged in fraudulent activities and decided to overlook them because of the benefits it derived from NRIA's business. The allegations of the Complaint are sufficient to give the Plaintiff this opportunity.

Next, the Court must consider whether the pleadings provide enough information for the Court to infer substantial assistance in the fraud. The following factors are used to determine whether conduct is substantial assistance: "(1) the amount of assistance given by the defendant, (2) [its] presence or absence at the time of the tort, (3) [its] relation to the other [party], and (4) [its] state of mind." *Monson*, 579 F.2d at 800. It has been recognized that a bank providing "essential banking services that allowed the Ponzi scheme to continue over a period of time" is sufficient to establish substantial assistance at the pleading stage if the bank knew these services were aiding the customer in committing fraud. *Mansor v. JPMorgan Chase Bank, N.A.*, 183 F.Supp.3d 250, 268-69 (D. Mass. 2016) ("[T]he factual allegations surrounding [the bank employee's] lifting of the [account] restraints is sufficient to establish substantial assistance.") (citation omitted). Whether the Bank employees' actions can be imputed to the Bank is a question of fact to be resolved upon further development of the record. *Mansor*, 183 F.Supp.3d at 269.

Debtors:        National Realty Investment Advisors, LLC, *et al.*
Case No.:       22-14539
Adv. Pro.:      25-01239
Caption:        **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

---

Here, the Plaintiff alleged that the Bank substantially assisted in the fraud committed by

NRIA as follows:

- The Bank instructed Dustin Salzano to identify himself as either a member or managing member on the NRIA accounts even though the Bank knew that he was not an employee, member, or managing member. [ECF No. 1, ¶ 52]. The Bank also permitted him to be a signatory on NRIA accounts. [ECF No. 1, ¶ 93].
- The Bank permitted the repeated use of Grabato's signature stamp by US Construction officers and employees. [ECF No. 1, ¶¶ 59, 109-114].
- The Bank permitted US Construction to frequently use cash from NRIA accounts for one property to pay for construction costs on another property or to make downpayments on other properties. [ECF No. 1, ¶ 64].
- The Bank advised and instructed Dustin Salzano to add the DBA name of "Realty Accounting Services, LLC" to the DeGraw Account. [ECF No. 1, ¶¶ 122-125].
- After flagging NRIA accounts for being "pooled funds accounts" and initiating their closure, the Bank permitted the accounts to stay open. [ECF No. 1, ¶¶ 174-184].

The Bank argues in response that it only provided "routine banking services." [ECF No.

10, p. 29 of 44]. But some of the services described above were beyond routine. Specifically, the

assistance provided with respect to the renaming of the DeGraw Account to mislead Investors and

vendors might not be passive banking. Neither is initiating the closure of accounts because of

"pooling" concerns and then reversing course after the accounts have been reviewed.

Therefore, the Plaintiff adequately pled that the Bank aided and abetted NRIA's fraud and

Count I will not be dismissed.

**III.    Aiding and Abetting Breach of Fiduciary Duty.**

A claim of aiding and abetting breach of fiduciary is similar to a claim of aiding and

abetting fraud but requires an additional element: "that the party knew that the other's conduct

constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the

other in committing that breach." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown,*

Debtors:          National Realty Investment Advisors, LLC, *et al.*
Case No.:         22-14539
Adv. Pro.:        25-01239
Caption:          **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

---

*Inc.,* 296 F.3d 164, 174 (3d Cir. 2002) (citations omitted). The heightened pleading standard of Rule 9(b) "generally does not apply to the state law claims of . . . aiding and abetting breach of fiduciary duty." *In re NorVergence, Inc.,* 405 B.R. at 746 (citing *In re Inacom Corp.,* 2001 WL 1819987, at *2 (D. Del. Aug. 7, 2001)).

The first prong of aiding and abetting is satisfied because the underlying breach of fiduciary duty arose from NRIA's Ponzi scheme. NRIA created the NRIA Partners Portfolio Fund I LLC ("Fund") and owed the Fund a fiduciary duty as an investment advisor. [ECF No. 1, ¶¶ 251-252]. Also, NRIA provided individualized investment advice directly to Investors, and NRIA owed a fiduciary duty to them. [ECF No. 1, ¶¶ 253-254]. Again, the question is whether the Plaintiff sufficiently pled that the Bank had knowledge that NRIA was breaching its fiduciary duty to Investors. As set forth in the previous section, the Plaintiff alleges that there were points in the relationship when the Bank gave NRIA's accounts special scrutiny. The Bank had access to the PPMs, Pre-Fund LLC operating agreements, and account activity. [ECF No. 1, ¶ 256]. With this information, it is reasonable to infer that the Bank learned that NRIA was moving funds from one entity to another in violation of its duties to its Investors. Also, the Plaintiff has plead that the Bank may have been aware of NRIA's breach of fiduciary duty through its advice with respect to the renaming of the DeGraw Account and the management level review of the pooled accounts which were flagged for closure.

The Plaintiff has also plead that the Bank substantially assisted or encouraged NRIA's breach of fiduciary duty. The allegations regarding the Bank's substantial assistance of NRIA's fraud, as described above, also demonstrates the Bank's substantial assistance of NRIA's breach

Page 20

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

of fiduciary duty. For these reasons, the Plaintiff sufficiently pled aiding and abetting breach of

fiduciary duty. Count III will not be dismissed.

**IV.    Aiding and Abetting Securities Fraud.**

Count II of the Complaint alleges that the Bank is responsible for NRIA's violation of the

New Jesey Uniform Securities Act ("NJUSA") because it provided material assistance to NRIA in

selling securities and acted as its agent. Under the NJUSA, an "agent" is "any individual other than

a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect

purchases or sales of securities." N.J.S.A. § 49:3-49(b) (emphasis added).

In related adversary proceedings in this case,[4] this Court considered the meaning of the

word "agent" in the NJUSA. The Court stated, "[i]t is clear that *Zendell* continues to stand for the

proposition that liability under the NJUSA should *only* extend to those that directly participate in

the sale of securities . . . ." *AIRN Liquidation Trust v. Wipfli LLC* (Adv. Pro. No. 24-01456, ECF

No. 19, p. 11 of 18) (citing *Zendell v. Newport Oil Corp.*, 226 N.J. Super. 431, 435 (App. Div.

1988)) (emphasis added).

Here, the Complaint did not make any allegations that the Bank represented NRIA directly

in the sale of securities. Instead, the general allegation is that the Bank provided banking services

for NRIA and acted as a distribution vehicle for payments to Investors. [ECF No. 1, ¶¶ 2, 32, 243-

245]. The Plaintiff did not adequately plead that the Bank aided and abetted securities fraud and

Count II of the Complaint will be dismissed.

---

[4] The adversary cases are *AIRN Liquidation Trust v. Media Effective LLC*, (Adv. Pro. No. 23-01335) and
*AIRN Liquidation Trust Co., LLC v. Wipfli LLP*, (Adv. Pro. No. 24-01456).

Debtors:        National Realty Investment Advisors, LLC, *et al.*
Case No.:       22-14539
Adv. Pro.:      25-01239
Caption:        **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

V.    **Avoidance/Remaining Claims.**

The Plaintiff also brought several avoidance claims: Count IV – Actual Fraudulent Transfers under the Bankruptcy Code, Count V – Constructive Fraudulent Transfers under the Bankruptcy Code, Count VI – Actual Fraudulent Transfers under New Jersey law, Count VII – Constructive Fraudulent Transfers under New Jersey law, Count VIII – Preferences under § 547 of the Bankruptcy Code, Count IX – Recovery of Avoided Transfers under § 550 of the Bankruptcy Code, and Count X – Preservation of Avoided Transfers under § 551 of the Bankruptcy Code.

a.    **Actual Fraudulent Transfers (Counts IV and VI).**

Count IV of the Complaint seeks recovery of actual fraudulent transfers to the Bank under § 548(a)(1)(A) of the Bankruptcy Code. This section states that the estate may avoid any transfer of interest in the debtor's property made within two years before the petition date if the transfer was made with "actual intent to hinder, delay, or defraud any entity to which" the debtor was indebted. The Plaintiff also alleges actual fraudulent transfers under New Jersey law in Count VI. Under N.J.S.A. § 25:2-25(a)(1), "A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Under New Jersey law, the estate can recover transfers made during a four-year lookback period. N.J.S.A. § 25:2-31(a).

The analysis for actual fraud under New Jersey law is essentially the same as under the Bankruptcy Code. There are two questions a court must explore: whether the debtor "'has put some asset beyond the reach of creditors which would have been available to them' at some point in time 'but for the conveyance'" and "whether the debtor transferred property with an intent to

Debtors:        National Realty Investment Advisors, LLC, *et al.*
Case No.:       22-14539
Adv. Pro.:      25-01239
Caption:        **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

defraud, delay, or hinder the creditor." *Gilchinsky v. Nat'l Westminster Bank, N.J.*, 159 N.J. 463, 475-76 (1999) (citations omitted). Further, "it is the transferor's intent, and not the transferee's, that is relevant and that must be pleaded to state a claim for an actual fraudulent transfer." *In re CTE 1 LLC*, Case No. 19-30256, Adv. Pro. No. 21-1455, 2023 WL 5257940 at *26 (Bankr. D.N.J. Aug. 11, 2023).

The Ponzi scheme presumption states that transfers made during a Ponzi scheme could be made "for no purpose other than to hinder, delay or defraud creditors." *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011) (quoting *Gowan v. The Patriot Grp., LLC*, 452 B.R. 391, 423 (Bankr. S.D.N.Y. 2011). Under the presumption, intent is established as a matter of law so long as the transferor intended to defraud *any* entity to which the debtor was indebted. *In re C.F. Foods, L.P.*, 280 B.R. 103, 111 (Bankr. E.D. Pa. 2002). A showing that the debtor engaged in a Ponzi scheme is sufficient to establish actual intent to hinder, delay or defraud. *In re NorVergence, Inc.*, 405 B.R. at 732 ("Upon demonstrating successfully the Salzano Scheme qualifies as a Ponzi Scheme, the actual intent to hinder, delay, or defraud creditors will be inferred."). For the Ponzi scheme presumption to apply, the Plaintiff must show how the transfer at issue was "related to" or "in furtherance of" the Ponzi scheme. *In re DBSI, Inc.*, 476 B.R. 413, 422 (Bankr. D. Del. 2012) (citations omitted).

Here, the Plaintiff alleges that the fraudulent transfers from NRIA to the Bank include banking and management fees in the two years preceding the bankruptcy in the amount of $19,494.28. [ECF No. 1, ¶ 263-264]. Also, the Plaintiff alleges that in the four years before filing for bankruptcy, the Bank has received $40,970.83 (which includes the two-year transfers of $19,494.28). [ECF No. 1. ¶ 283]. The Plaintiff states that these transfers of fees to the Bank were

Page 23

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

made in furtherance of the Ponzi scheme. [ECF No. 1, ¶ 267]. Because it is alleged that NRIA was conducting a Ponzi scheme, and the Plaintiff alleges that the fees paid to the Bank were in furtherance of the Ponzi scheme, the Ponzi scheme presumption applies. The actual fraudulent transfer claims in Counts IV and VI will not be dismissed.

### b.  Constructive Fraudulent Transfers (Counts V and VII).

The Plaintiff also brings claims for constructive fraudulent transfers under the Bankruptcy Code (Count V) and New Jersey law (Count VII). Section 548(a)(1)(B) of the Bankruptcy Code provides that transfers may be avoided if the Debtors received less than reasonably equivalent value in return for the transfer while the Debtors was insolvent. *See also* N.J.S.A. § 25:2-25(a)(2) and 25:2-27(a). The Complaint seeks to recover "all banking and management fees paid to [the] Bank" and refers to lengthy schedules with modest monthly deductions by the Bank. [ECF No. 1, ¶¶ 272, 291]. There is no allegation that these monthly fees were unreasonable, or more than fees charged by other banks. Therefore, the Plaintiff's claims for constructive fraudulent transfers in Counts V and VII are dismissed.

### c.  Preferences (Count VIII).

The Plaintiff brings a claim for recovery of preferential transfers under 11 U.S.C. § 547. The Complaint refers to a schedule of transfers made within 90 days of NRIA's bankruptcy filing. Again, these are modest monthly deductions totaling $2,020.95. These transfers from NRIA to the Bank seem to be standard banking fees in the ordinary course. Under § 547(b) of the Bankruptcy Code, a preference claim must be based on "reasonable due diligence" and must account for the defendant's "known or reasonably knowable affirmative defenses." It does not appear that the Plaintiff has considered the Bank's § 547(c) defenses including contemporaneous exchange,

Debtors:          National Realty Investment Advisors, LLC, *et al.*
Case No.:         22-14539
Adv. Pro.:        25-01239
Caption:          **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

ordinary course of business, and that the claim is for less than the statutory minimum. For this

reason, the Plaintiff's claim for recovery of preferences in Count VIII is dismissed.

### d.  Recovery and Preservation of Avoided Transfers (Counts IX and X).

The Plaintiff seeks to recover and preserve the allegedly avoidable transfers under 11

U.S.C. §§ 544, 547, 548, and/or applicable state law for the transfers in Counts IV through VIII.

The Court has dismissed Counts V, VII, and VIII, but Counts IV and VI have not been dismissed.

The claims for recovery and preservation of the avoided transfers in Counts IV and VI survive this

Motion to Dismiss.

### e.  Aiding, Abetting, or Participation in Conversion (Count XI).

Under New Jersey law, conversion is "the intentional exercise of dominion and control

over chattel that seriously interferes with the right of another to control that chattel." *Meisels v.*

*Fox Rothschild LLP*, 240 N.J. 286, 305 (2020). A claim for conversion requires the Plaintiff to

prove "(1) Defendants wrongfully exercised dominion or control over Plaintiff's property; (2) the

property was taken without authorization; and (3) the property was taken to the exclusion of the

owner's rights to it." *In re Vertis Holdings, Inc.*, 536 B.R. 589, 638 (Bankr. D. Del. 2015). A claim

for aiding and abetting conversion survives a motion to dismiss if the plaintiff properly alleges the

existence of the conversion, knowledge by the aider-abettor of the conversion, and substantial

assistance by the aider-abettor in carrying out the conversion. *In re Verestar, Inc.*, 343 B.R. 444,

482 (Bankr. S.D.N.Y. 2006).

The Plaintiff adequately alleged facts demonstrating that NRIA committed conversion of

Investor funds. At least some of NRIA's Investors entrusted their funds with NRIA with the

understanding that they were investing in a single real estate development project. Instead, NRIA

Debtors:         National Realty Investment Advisors, LLC, *et al.*
Case No.:        22-14539
Adv. Pro.:       25-01239
Caption:         **DECISION RE: DEFENDANT'S MOTION TO DISMISS**

wrongfully moved these funds to other entities to perpetrate its fraud without Investor knowledge or consent. Once these funds were transferred, the Investors no longer had access to them.

Further, as described above, the Plaintiff adequately alleged facts from which the Court can reasonably infer the Bank had knowledge that NRIA was engaged in the conversion of Investor funds and provided substantial assistance. For example, the Bank advised Dustin Salzano to add the DBA name to the DeGraw Account, which drew the Bank's attention to the alleged fact that the DeGraw Account was being used to make payments for purposes other than the DeGraw Property. [ECF No. 1, ¶¶ 116-127]. Arguably, this would have been a conversion of the DeGraw Investors' funds by NRIA. The Plaintiff's claim for aiding and abetting conversion in Count XI will not be dismissed.

### f.    Unjust Enrichment (Count XII).

In Count XII of the Complaint, the Plaintiff alleges that the Bank was unjustly enriched. An unjust enrichment claim under New Jersey law must establish that the defendant "received a benefit and that retention of that benefit without payment would be unjust." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 754 (D.N.J. 2013) (citation omitted). The Plaintiff suggests that the Bank's retention of banking fees in exchange for providing banking services was unjust. This claim is like the constructive fraudulent conveyance claims above that are being dismissed. Moreover, the Bank's retention of the fees paid by NRIA would only be "unjust" if the Plaintiff prevails on one of its aiding and abetting tort claims. These tort claims are the main event in this adversary proceeding and New Jersey does not recognize unjust enrichment as an independent tort cause of action. *Jurista,* 492 B.R. at 754. Count XII will be dismissed.

Page 26

| | |
|---|---|
| Debtors: | National Realty Investment Advisors, LLC, *et al.* |
| Case No.: | 22-14539 |
| Adv. Pro.: | 25-01239 |
| Caption: | **DECISION RE: DEFENDANT'S MOTION TO DISMISS** |

### g. Disallowance and Equitable Subordination of Claims (Count XIII).

Once a party has made a claim against a bankruptcy estate, equitable subordination pursuant to 11 U.S.C. 502(d) requires the Court to consider the following: "(1) the claimant must have engaged in some type of inequitable conduct, (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination of the claim must not be inconsistent with the provisions of the bankruptcy code." *In re Nat'l Realty Inv. Advisors, LLC*, 672 B.R. 651, 658 (Bankr. D.N.J. 2025) (citations omitted).

Here, the Bank has not filed a claim in the NRIA bankruptcy case that can be disallowed or equitably subordinated. Therefore, Count XIII is dismissed without prejudice. If the Bank somehow has a claim to assert later in this case, the Plaintiff's right to object is preserved.

### CONCLUSION

The Bank's Motion to Dismiss the Plaintiff's Complaint is granted as to Counts II, V, VII, VIII, XII, and XIII, and is denied as to all other Counts. The Plaintiff's right to seek leave to amend the Complaint under Federal Rule of Civil Procedure 15(a)(2) is fully preserved.